Filed 3/13/24  P. v. Power CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>JOSHUA CODY POWER,<br><br>    Defendant and Appellant. | F084793<br><br>(Super. Ct. No. BF176741A)<br><br><br>**OPINION** |

## THE COURT[*]

APPEAL from a judgment of the Superior Court of Kern County.  John W. Lua, Judge.

Janice M. Lagerlof, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez, Lewis A. Martinez and William K. Kim, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]    Before Hill, P. J., Poochigian, J. and Meehan, J.

**SEE CONCURRING OPINION**

Defendant Joshua Cody Power contends on appeal that his sentences on counts 1 and 3 must be vacated and the case remanded for resentencing because the trial court abused its discretion in imposing the upper terms pursuant to Penal Code[1] section 1170, subdivision (b).[2]  We agree that the trial court erred in its application of section 1170, subdivision (b), but conclude any error was harmless.  We affirm.

## PROCEDURAL SUMMARY

On June 22, 2022, the Kern County District Attorney filed an amended information charging defendant with first degree murder (§ 187, subd. (a); count 1); assault by means of force likely to produce great bodily injury while confined in prison (§ 4501, subd. (b); count 2); and attempt by threats or violence to deter a correctional officer from performing his duty (§ 69; count 3).  As to count 2, it was further alleged that defendant personally inflicted great bodily injury upon the victim (§ 12022.7, subd. (a)).  It was also alleged that defendant has five prior strike convictions under the "Three Strikes" law (§§ 667, subds. (c)–(j), 1170.12, subds. (a)–(e)), two of which were prior serious felony convictions (§§ 667, subd. (a)).

The district attorney alleged the following circumstances in aggravation:  the crime involved great violence (California of Rules of Court, rule 4.421(a)(1));[3] the victim was particularly vulnerable (rule 4.421(a)(3)); defendant engaged in violent conduct indicating a serious danger to society (rule 4.421(b)(1)); and defendant has prior convictions that are numerous or of increasing seriousness (rule 4.421(b)(2)).

---

**1**     All statutory references are to the Penal Code.

**2**     Section 1170, subdivision (b) was recently amended effective January 1, 2022, by Senate No. Bill 567.  (2021–2022 Reg. Sess.; Senate Bill 567) (See Stats. 2021, ch. 731, § 1.3, adding § 1170, subd. (b)(1), (2).)  The amended statute was in effect at the time of defendant's sentencing.

**3**     All references to rules are to the California Rules of Court.

2.

On July 15, 2022, a jury found defendant guilty of the lesser included offense of voluntary manslaughter (§ 192) on count 1, and guilty as charged on count 2 (§ 4501, subd. (b)) and count 3 (§ 69). The jury found true the allegation that defendant personally inflicted great bodily injury upon the victim (§ 12022.7, subd. (a)).

On July 15, 2022, a bench trial was held on the prior convictions and aggravating circumstances allegations. The court found not true the alleged aggravating circumstance that the victim was particularly vulnerable. The court found true the five prior strike convictions, two of which were prior serious felony convictions, and the three remaining aggravating circumstances allegations: (1) that the crime involved great violence (rule 4.421(a)(1)); (2) that defendant engaged in violent conduct indicating a serious danger to society (rule 4.421(b)(1)); and (3) that defendant has prior convictions that are numerous or of increasing seriousness (rule 4.421(b)(2)).

On August 12, 2022, the trial court sentenced defendant to prison for the indeterminate term of 33 years to life (the upper term, tripled pursuant to § 667, subd. (e)(2)(A)(i)) on count 1 (voluntary manslaughter; § 193, subd. (a)) plus 10 years for the two prior serious felony conviction enhancements (§ 667, subd. (a)), and six years (the upper term) on count 3 (attempt by threats or violence to deter a correctional officer from performing his duty; §§ 18, 69). The term imposed on count 2 was stayed under section 654.

On August 12, 2022, defendant filed a notice of appeal.

## FACTS

### *Prosecution*

Defendant and Kevin Mansfield were inmates at a corrections facility. They had been housed in the same cell since approximately December 2017. Their cell was in a locked and secure unit.

On February 16, 2018, correctional officer Kevin Almond came on duty at 10:00 p.m. Almond testified that in defendant's unit all cell doors are locked at

11:00 p.m. Almond's supervising officer on the night of the incident, correctional officer Khwann Oliver, testified that routine inmate counts are conducted daily at 5:00 a.m., 12:00 p.m., 5:00 p.m., 9:30 p.m., and 11:00 p.m.[4] During inmate counts, a correctional officer is supposed to go to each cell in the unit to verify all inmates are physically present, coherent, and responsive.

Almond testified he was briefed by the officers who were on the prior shift when he began his shift on the evening of the incident that the 9:00 p.m. routine inmate count had been conducted and there had been no incidents in the unit. The control booth officer on duty in the unit that evening, correctional officer Yolanda Pantoja, whose shift also began at 10:00 p.m., stated that according to protocol, she would have been informed by the officer with the prior shift that the routine 9:30 p.m. inmate count had been performed. She also testified that she believed the 9:30 p.m. count had been conducted according to standard procedure because no one had informed her otherwise. Pantoja stated that she had not heard any unusual sounds in the unit from the time she began her shift at 10:00 p.m. until Almond began the 11:00 p.m. inmate count.

At approximately 11:00 p.m., Almond began the 11:00 p.m. inmate count. He stated that at approximately 11:03 p.m. he approached the cell occupied by defendant and Mansfield. He noticed the light of their cell was still on and their window was partially covered by cardboard. From outside the cell, Almond ordered the inmates to take the cardboard off the window but received no response. Almond testified that when he looked inside the cell through the uncovered part of the window, he saw the two inmates about two feet from the back of the cell. Mansfield's body was laying on the floor, and

---

[4]     Almond also stated that a minimum of five inmate counts are conducted daily. He stated he was not sure of all of the times they were regularly scheduled throughout a 24-hour period. However, he and Oliver both testified that counts occurred daily at both 9:30 p.m. and 11:00 p.m.

4.

defendant was laying on top of him, punching the right side of Mansfield's face. Almond said that he ordered the inmates to stop fighting and get in a prone position, but defendant continued to punch Mansfield, so he radioed other officers for assistance. Almond testified that at the time he was not sure what Mansfield's condition was, but he did not see Mansfield make any voluntary movement or response. He only saw Mansfield's body move as it was being struck by defendant.

When the inmates did not comply with Almond's orders, he pepper sprayed inside the cell through the food port. He stated that the first burst of pepper spray had no effect on either inmate, and defendant continued to punch Mansfield's face. Almond testified that he realized Mansfield was incoherent, so he radioed that there was a medical emergency. Almond again ordered defendant to stop fighting and to get in a prone position, but defendant replied, "F[***] you" and continued. Almond sprayed a second burst of pepper spray into the cell, which caused defendant to slide off Mansfield and lay on the side of the cell. Defendant attempted to stand but fell. Almond testified that Mansfield made no movements after defendant stopped punching him. Almond ordered defendant to back up to the food port so he could place handcuffs on him but he did not comply.

Assisting officers performed an extraction on defendant but he resisted the officers' efforts to restrain him, punching and kicking the officers. Oliver hit defendant's legs and buttocks with his baton but defendant continued to resist until the officers were eventually able to place handcuffs and leg restraints on him and put him in a wheelchair because he refused to walk.

Almond testified that after defendant was extracted, Mansfield was lying on the floor of the cell. Almond did not observe Mansfield breathe or make voluntary movements. Oliver also testified that he did not see Mansfield make any voluntary movements and appeared "fully unresponsive." Oliver stated that Mansfield "was laying facedown … [a]s [correctional officers] turned him over and placed him on the

backboard … it appeared that he had skin that—the skin appeared to be burned somehow. It was peeling off of his face, shoulder, hands. His—he was covered in blood. It even appeared as if his face was somewhat deformed, like disfigured." Another correctional officer involved in the extraction, Hector Ortega, stated that efforts to resuscitate Mansfield with an automated electric device (AED) were unsuccessful. Medical personnel determined Mansfield did not have a pulse and was not breathing. Medical personnel were having trouble getting the AED properly applied to Mansfield's chest because there was so much blood that it would slide off his skin. They instead began chest compressions as they transported him to the medical clinic but were unsuccessful. Attending paramedics pronounced him deceased. Almond stated he was shocked and surprised at the condition of the cell and extent of the violence, and the cell "had so much blood inside … that it would be difficult to go in there without it actually being on your person."

Almond testified that defendant looked unrecognizable because of the amount of blood he had on his body. He accompanied defendant to the medical clinic and stated that defendant continued to act belligerent there, cursing at the medical team.

Mansfield was also brought to the medical clinic. Almond observed that he did not seem responsive. Oliver also observed Mansfield at the medical clinic and believed he appeared to be deceased.

Forensic pathologist Dr. Robert Whitmore testified that he performed an autopsy of Mansfield. He determined his cause of death was strangulation with blunt force head trauma contributing. He stated that he observed second degree burns on his face, the right side of his body and upper extremity, and left hand, "consistent with hot liquid being applied." He stated that he also observed "blunt force trauma to the head and some to the body." He noticed a large contusion on his forehead, bruise on his nose, fractured nasal bone, bruises and cuts to his lips, abrasions, lacerations and bruising to his left eye, ruptured left eyeball, and leaking eye fluid. He testified that the ruptured eyeball would

6.

have been caused by "significant" force and it would be unusual for such an injury to be caused by a fist or elbow.

He also noted petechiae, or "pinpoint hemorrhages," in Mansfield's right eye, which is frequently caused by strangulation, and saw hemorrhaging in his neck muscles, tongue muscle, pharynx and thyroid gland and that the thyroid cartilage had two fractures. He explained that for force applied to the neck to cause death, it must typically be sustained for three to five minutes and that a person being strangled by continuous pressure being applied to the neck would lose consciousness "fairly rapidly … [m]aybe ten seconds," and that, "if the pressure's released, [the person will] wake back up."

### *Defense*

Several correctional officers and former cellmates of Mansfield testified about their past interactions with Mansfield. They described him as dangerous and violent and testified that he committed prior assaults on other inmates and had been found in possession of inmate manufactured weapons.

Defendant testified that he and Mansfield had been cellmates for approximately a month or month and a half and his requests to be moved out of Mansfield's cell had been ignored multiple times. Defendant stated that although he and Mansfield had no prior altercations, he was scared of Mansfield because Mansfield presented himself to other inmates as a violent person.

Defendant testified that on the evening of the incident, he was brewing whiskey in their cell and he and Mansfield had been drinking a considerable amount of it since 6:00 p.m. or 6:30 p.m. He testified Mansfield was "talking down" to him and about 30 to 45 minutes after they started drinking, Mansfield suddenly attacked him, punching and choking him. Defendant stated he tried to get to the door, and fought back, fearing Mansfield would kill him. He stated Mansfield latched onto his neck and started choking him, causing him to fear he would die. He stated he threw Mansfield off his back,

7.

causing Mansfield to fall into the batch of whiskey that was brewing. He testified that the fight lasted "nonstop" for hours, and that no one checked on their cell at 9:30 p.m. He stated that at some point, "[b]eing so tired and beat up," he held Mansfield down to get him to stop fighting. He stated he strangled Mansfield but did not intend to kill Mansfield. He stated he resisted the officers and restraints because he was "a little inebriated," "falling everywhere," and "trying to protect himself" because the officers "were pushing a shield down on top of [him]." He testified that he sustained broken cartilage in his nose, scrapes on his elbows and knees, and lacerations in the incident, but suffered no burns or puncture wounds. He stated that both he and Mansfield suffered swollen hands caused by fighting each other.

## DISCUSSION

Defendant contends the trial court abused its discretion in imposing the upper terms on counts 1 and 3 because it did not properly apply section 1170, subdivision (b). He argues the court erred in its application of section 1170, subdivision (b) by (1) finding no mitigating circumstances, thus failing to properly balance aggravating against mitigating circumstances; (2) relying on an aggravating circumstance not alleged or specifically found true in the court trial on the aggravating circumstances; and (3) failing to state separate reasons relating to the selection of the upper terms for counts 1 and 3. The People disagree. We conclude the court erred by relying on an aggravating circumstance not found true beyond a reasonable doubt in the separate bench trial on the aggravating circumstances, but any error was harmless.

### A.    Background

The information alleged four circumstances in aggravation: (1) the crime involved great violence (rule 4.421(a)(1)); (2) the victim was particularly vulnerable (rule 4.421(a)(3)); (3) defendant engaged in violent conduct indicating a serious danger to society (rule 4.421(b)(1)); and (4) defendant has prior convictions that are numerous or of increasing seriousness (rule 4.421(b)(2)).

8.

On July 15, 2022, after the jury trial on the charges concluded, a bench trial was held on the prior convictions and aggravating circumstances allegations. The trial court admitted as exhibits a certified copy of a defendant's CLETS printout, or rap sheet (Exh. 12), and defendant's 969b packet (Exh. 13). After considering the exhibits, the evidence presented at the jury trial, the probation report and the parties' arguments, the court stated it found not true the alleged aggravating circumstance that the victim was particularly vulnerable (rule 4.421(a)(3)) but found true the remaining aggravating circumstances alleged: (1) that the crime involved great violence (rule 4.421(a)(1)); (2) that defendant engaged in violent conduct indicating a serious danger to society (rule 4.421(b)(1)); and (3) that defendant's prior convictions are numerous or of increasing seriousness (rule 4.421(b)(2)).

On August 12, 2022, at sentencing, the court discussed whether the upper, middle, or low terms were appropriate for counts 1 and 3. It found no mitigating circumstances but found four aggravating circumstances justifying the imposition of the upper terms on counts 1 and 3. It stated,

> "In considering the probation officer's report and presiding over the trial, the Court does have a grasp of the information presented to the jury as well as the information now presented to the Court. In considering the appropriate triad to select an indeterminate-term sentencing, the court is mindful of … Rule 4.421 and recognizes the limitations the Court can utilize to justify an upper-term sentence. The Court says that because Count 3, as all counsel are aware, is a count that would result in a determinate-term sentence.

> "The circumstances in aggravation, likewise, can be utilized for the Court to consider an indeterminate-term sentencing as it relates to factors to determine whether to exercise discretion to strike or to impose sentencing for particular reasons. It does appear to the Court, based on an evaluation of the circumstances in mitigation and aggravation, that the Court will be guided by exercising its discretion when considering those factors.

> "For purposes of circumstances in mitigation, there simply aren't any. For circumstances in aggravation, the Court does agree with the

9.

recommendations by the Probation Department, recognizing that the Court did find in a separate trial that three circumstances in aggravation were proven by the People beyond a reasonable doubt.

> "One, the crime involved great violence, great bodily harm, threat of great bodily harm or other acts disclosing a high degree of cruelty, viciousness or callousness. That is pursuant to [rule 4.421(a)(1)]. Two, pursuant to [rule 4.421(b)(1)], the defendant has engaged in violent conduct that indicates a serious danger to society as evidenced by his present conviction as well as prior convictions. Three, pursuant to [rule 4.421(b)(2)], the defendant's prior convictions as an adult are numerous or of increasing seriousness. And four, the defendant's prior performance on juvenile misdemeanor and felony probation as well as parole have been unsatisfactory and that he has failed to comply with terms and he has re-offended."

The fourth aggravating circumstance cited by the trial court, that defendant's prior performance on juvenile misdemeanor and felony probation and parole was unsatisfactory, was not alleged in the information, nor found true at the earlier bench trial on the alleged circumstances in aggravation.

The trial court then imposed the upper terms on count 1 (§ 192; voluntary manslaughter) and count 3 (§ 69; attempt by threats or violence to deter a correctional officer from performing his duty).

### B.      Law

As amended by Senate Bill 567, effective January 1, 2022, section 1170, subdivision (b) states that "when a sentencing court chooses a term from a statutory triad, the chosen term shall not exceed the middle term, unless the facts supporting the aggravating circumstances are (1) established by the defendant's stipulation to them, (2) proven to a jury (or to a court, if jury is waived) beyond a reasonable doubt, or (3) based on prior convictions evidenced by a certified record of conviction." (*People v. Jones* (2022) 79 Cal.App.5th 37, 44; § 1170, subd. (b).)

Under amended section 1170, subdivision (b)(5), the trial court must "set forth on the record the facts and reasons for choosing the sentence imposed. The court may not

impose an upper term by using the fact of any enhancement upon which sentence is imposed under any provision of law." (§ 1170, subd. (b)(5).)

We review the trial court's imposition of the upper term for an abuse of discretion. (See *People v. Sandoval* (2007) 41 Cal.4th 825, 847.) A court abuses its discretion when its ruling "falls outside the bounds of reason." (*People v. DeSantis* (1992) 2 Cal.4th 1198, 1226 (*DeSantis*).) In doing so, we are "guided by two fundamental precepts":

> "First, ' "[t]he burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary. [Citation.] In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review." ' [Citations.] Second, ' "a decision will not be reversed merely because reasonable people might disagree. 'An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge.' " ' [Citation.] Taken together, these precepts establish that a trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*People v. Carmony* (2004) 33 Cal.4th 367, 376–377 (*Carmony*).)

### C.    *Analysis*

#### 1.    **Mitigating Circumstances**

Defendant first contends that the trial court erred because it did not find true any mitigating circumstances. He argues the court ignored evidence of the following applicable mitigating factors under rule 4.423: (1) the victim was an initiator of, willing participant in, or aggressor or provoker of the incident (rule 4.423(a)(2)); (2) the crime was committed because of an unusual circumstance, such as great provocation, that is unlikely to recur (rule 4.423(a)(3)); (3) defendant participated in the crime under circumstances of coercion or duress, or the criminal conduct was partially excusable for some other reason not amounting to a defense (rule 4.423(a)(4)); and (4) defendant was intoxicated at the time of the offense (rule 4.423(b)(2)). Defendant further contends that the mitigating factors that the court should have found true should have outweighed the

11.

court's finding that the offense involved great cruelty under rule 4.421(a)(1). Here, the record shows the court clearly considered the totality of circumstances when finding there were no mitigating circumstances. Accordingly, its finding that the aggravating circumstances outweighed the lack of mitigating circumstances was not so arbitrary or irrational that no reasonable person could disagree with it such that it fell outside the bounds of reason. (See *Carmony*, *supra*, 33 Cal.4th at pp. 376–377; see also *DeSantis*, *supra*, 2 Cal.4th at p. 1226.) During the jury trial, defense counsel argued that the victim, Mansfield, was the aggressor, and that defendant had acted to defend himself. The jury and court also heard evidence about Mansfield's violent history in prison before the incident at issue, and several inmates who knew Mansfield before the incident testified about his violent behavior and history of attacking other inmates. The jury found that defendant committed voluntary manslaughter.

During the hearing on the circumstances in aggravation, the trial court considered Mansfield's role in the fight and Mansfield's history of violence in declining to find that Mansfield was particularly vulnerable (rule 4.421, subd. (a)(3)).

At sentencing, defense counsel again argued that Mansfield was the aggressor and that the court should find that defendant defended himself as a circumstance in mitigation. However, the trial court noted that Mansfield's role in the incident was already taken into account by the jury's finding of voluntary manslaughter on count 1, as the finding of voluntary manslaughter must have been based on either heat of passion or imperfect self-defense, and that the jury thus rejected the defense of perfect self-defense. Discussing defendant's *Romero*[5] motion and the sentencing triads, the court stated:

> "There is one thing that the jury certainly found, that the defendant was not guilty of murder, but he was guilty of voluntary manslaughter for either imperfect self-defense or in the heat of passion. It does appear to the Court, as an objective observer, that at some point this jury was provided

---

**5** *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497.

12.

with guidance in determining whether the defendant completely or perfectly defended himself during the course of this action or whether he imperfectly defended himself.  By virtue of the verdict, it is reasonable to infer that the defendant very well might have been defending himself but did so imperfectly by using excessive force under the circumstances.

"It is that excessive force that this Court considers strongly as it relates to the manner in which the defendant comported himself in exercising excessive force to kill another human being.  As testified to by the pathologist, he testified that it would take approximately ten seconds of continuous pressure around the neck to render an individual unconscious.  It would take another two minutes and 50 seconds, up to four minutes and 50 seconds, for continued pressure along that neck area to kill someone or to strangle someone.  Those are the circumstances that the Court is confronted with when determining … whether—given the circumstances of the offense specifically, the defendant should be afforded an opportunity to be found outside the spirit of the Three Strikes Law.  It does not appear to the Court, given the circumstances of the offense as presented before this jury, that the defendant should be afforded that right based on the excessive force utilized by the defendant to kill another human being.  For those reasons alone, the Court would deny the *Romero* motion.

"But I stated previously the Court must likewise consider the totality of the circumstances, which would also include the defendant's criminal history.  The Court has been presented with documentation during the court trial to prove beyond a reasonable doubt the prior convictions alleged.  Court has also been provided with a probation officer's report which outlines, albeit briefly, the defendant's criminal history.  When considering this information, the Court does recognize that the defendant has suffered one past juvenile adjudication, at least two misdemeanor convictions, nine felony convictions, five violations of probation.  Of the nine felony convictions, five qualified as strike priors.

"Given the information provided to the Court during the course of this motion, the Court now has a better understanding of the four strike priors accumulated in one case out of Tuolumne County in which they did derive from separate acts or involved separate victims to justify consecutive sentencing.  That is significant for the Court because the Court views that particular case and those suffered convictions not as a single course of abhorrent behavior but rather a continuous course of conduct, certainly one that is disturbing, and that sets aside the prior convictions that ultimately arose in 2011.  For those reasons it does not appear to the Court

that the defendant is outside the spirit of the Three Strikes Law, and on that basis the *Romero* motion is denied."

It then stated, "For purposes of circumstances in mitigation, there simply aren't any."

The record reflects that the trial court considered whether the evidence supported the finding of any mitigating circumstances enumerated in rule 4.423. It was within the court's discretion to find that, while defendant may have been defending himself, the excessive force defendant used did not justify finding Mansfield's role of aggressor as a mitigating circumstance.

Defendant further contends that "the court's finding in aggravation: that the crime involved a high degree of cruelty, based on [Mansfield's] injuries and the condition of the cell, did not adequately consider all the surrounding circumstances, especially in light of its belief that Mansfield was not a particularly vulnerable victim and had been the initial aggressor." However, the record shows the trial court considered the evidence presented at trial in finding the aggravating circumstance of a "high degree of cruelty" was not outweighed by mitigating factors, as it stated it "consider[ed] strongly" the "excessive force [defendant used] to kill another human being," based on the pathologist's testimony that it would only have taken approximately 10 seconds of continuous pressure around Mansfield's neck for defendant to render him unconscious, but would have taken another two minutes 50 seconds, up to four minutes 50 seconds, of pressure on Mansfield's neck for defendant to kill Mansfield. Based on the record, the court's finding that the offense involved a high degree of cruelty was within the court's discretion and was neither so irrational nor arbitrary that no reasonable person could agree with it.

Defendant also argues the evidence shows the fight was still ongoing when Almond came to the cell door. However, the record shows that when Almond arrived at the cell, he only saw defendant punching Mansfield and never saw Mansfield make any voluntary movement. Based on this testimony, the trial court could reasonably infer that

Mansfield was already incapacitated while defendant continued to punch him, supporting the court's finding of "excessive force" or "great violence" and that any self-defense by defendant was imperfect self-defense.

Accordingly, the record shows the trial court did not abuse its discretion in finding there were no mitigating circumstances, or in finding that the aggravating circumstances outweighed the lack of mitigating circumstances, as these findings were neither so irrational nor arbitrary that no reasonable person could disagree. (See *Carmony*, *supra*, 33 Cal.4th at pp. 376–377; see also *DeSantis*, *supra*, 2 Cal.4th at p. 1226.)

### 2. Prior Performance on Probation (Rule 4.421(b)(5))

Defendant next argues that the trial court abused its discretion by using defendant's prior performance on probation and parole (rule 4.421(b)(5)) as an aggravating circumstance supporting imposition of the upper terms for counts 1 and 3 at sentencing because that circumstance was not alleged or specifically found true in the separate bench trial on the aggravating circumstances, as required by section 1170, subdivision (b). Defendant contends "the parole performance factor [(rule 4.421(b)(5))] does not fit within the exception for prior convictions contained in section 1170[, subdivision] (b)(3) which permits the court to consider 'a certified record of conviction' " for defendant's criminal history.

We agree the trial court erred in using the aggravating circumstance of defendant's prior performance on probation and parole at sentencing to impose the upper terms on counts 1 and 3. However, we conclude any error was harmless because the court's statement shows it is not reasonably probable that a result more favorable to defendant would have been reached in the absence of the error.

At the bench trial on the aggravating and mitigating circumstances, the court found true three aggravating circumstances: (1) the crime involved great violence (rule 4.421(a)(1)); (2) defendant engaged in violent conduct indicating a serious danger to

15.

society (rule 4.421(b)(1)); and (3) defendant has prior convictions that are numerous or of increasing seriousness (rule 4.421(b)(2)). A certified copy of defendant's criminal history (a section 969b packet; exh. 13) and a CLETS printout (rap sheet; exh. 12) were admitted into evidence and considered by the court at the bifurcated trial.

At sentencing, after citing the three aggravating circumstances it found true at the earlier bench trial on the aggravating and mitigating circumstances, the court also cited a fourth aggravating circumstance, stating defendant's "prior performance on juvenile misdemeanor and felony probation as well as parole have been unsatisfactory [in] that he has failed to comply with terms and he has re-offended."

Rule 4.421(b)(5) lists "prior performance on probation … or parole" as an aggravating circumstance. (Rule 4.421(b)(5).)

Amended section 1170, subdivision (b) permits imposition of an upper term based on a circumstance in aggravation where the facts underlying the circumstance have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial. (§ 1170, subd. (b)(2).) Under section 1170, subdivision (b)(3), the trial court, "may consider the defendant's prior convictions in determining sentencing based on a certified record of conviction without submitting the prior convictions to a jury." (§ 1170, subd. (b)(3).)

Our court recently articulated a standard of review if a trial court fails to follow section 1170, subdivision (b) in *People v. Dunn* (2022) 81 Cal.App.5th 394, review granted October 12, 2022, S275655 (*Dunn*). *Dunn* establishes a three-question framework. First, we determine: "(1)(a) beyond a reasonable doubt whether the jury would have found one aggravating circumstance true beyond a reasonable doubt and (1)(b) whether there is a reasonable probability that the jury would have found any remaining aggravating circumstance(s) true beyond a reasonable doubt. If all aggravating circumstances relied upon by the trial court would have been proved to the respective standards, any error was harmless." (*Id*. at pp. 409–410, fn. omitted.) If the answer to

16.

question (1)(b) is no, then we determine "(2) whether there is a reasonable probability that the trial court would have imposed a sentence other than the upper term in light of the aggravating circumstances provable from the record as determined in the prior steps. If the answer [to question (2)] is no, the error was harmless. If the answer is yes, the reviewing court vacates the sentence and remands for resentencing …." (*Id*. at p. 410.) Under the *Dunn* framework, the "reasonable probability" standard of *People v. Watson* (1956) 46 Cal.2d 818 (*Watson*) is incorporated into questions (1)(b) and (2).[6] (*Dunn*, at pp. 407, 409–410.) The test under *Watson* is whether, " 'after an examination of the entire cause, including the evidence,' [the reviewing court] is of the 'opinion' that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." (*Watson*, at p. 836.)

Here, the facts underlying three of the circumstances in aggravation cited by the trial court were found true by the court or contained in the certified records of conviction. However, the fourth circumstance in aggravation relied on by the court, that defendant's prior performance on probation and parole was unsatisfactory (rule 4.421(b)(5)), was neither alleged in the information nor found true by the trial court at the hearing on aggravating circumstances. Nevertheless, the upper terms were imposed on counts 1 and 3. The court's imposition of the upper terms on counts 1 and 3 is thus not consistent with the requirements of section 1170, subdivision (b). Unless imposition of the upper term

---

[6]    Our court has also articulated a second possible standard of review in *People v. Falcon* (2023) 92 Cal.App.5th 911, review granted September 13, 2023, S281242. However, *Falcon* expressly states its two-question standard applies to retroactive applications of Senate Bill 567. (*Falcon*, at pp. 921 ["We … hold that upon retroactive application of Senate Bill 567 to upper term sentences imposed under [§ 1170], resentencing is unwarranted *only if* two requirements are met …."], 951 ["In sum, whether resentencing of an upper term sentence is the appropriate remedy on retroactive application of amended section 1170[, subdivision] (b) involves two relevant questions."].) Here, amended section 1170 was already in effect when defendant was sentenced. Accordingly, this case does not involve the retroactive application of Senate Bill 567, so *Falcon* is inapplicable.

on counts 1 and 3 was harmless, the sentence on those counts must be vacated and the matter remanded to the trial court for resentencing in compliance with section 1170, subdivision (b).

Accordingly, we must answer *Dunn*'s questions.

We revisit the aggravating circumstances relied upon by the trial court. Here, as discussed above, there was no error as to the court's findings on the first three aggravating circumstances found true at the bench trial on the circumstances in aggravation and mitigation because those circumstances meet the requirements of section 1170, subdivision (b)(2), that the trial court found the facts underlying those circumstances true beyond a reasonable doubt, or subdivision (b)(3), that the facts were proven by a certified record of defendant's prior convictions. Accordingly, we need not determine beyond a reasonable doubt whether the jury would have found any one aggravating circumstance true beyond a reasonable doubt, as required by *Dunn* question 1(a).[7]

We must next address *Dunn* question 1(b) to determine whether there is a reasonable probability that the trial court would not have found the remaining aggravating circumstance true beyond a reasonable doubt. Here, the court did not make a specific finding as to the facts underlying the fourth aggravating circumstance, defendant's prior performance on probation and parole, that it cited at sentencing. Defendant contends that the court would not have found true the aggravating circumstance regarding defendant's prior performance on probation or parole because it does not fit within the exception for prior convictions in section 1170, subdivision (b)(3), which permits a court to consider "a certified record of conviction," and because the

---

[7]     Because there was no error by the trial court in relying upon the first three aggravating circumstances, we need not apply the *Chapman v. California* (1967) 386 U.S. 18 harmless error standard to the remaining aggravating circumstance. We instead apply *Watson*, as the requirements of the Sixth Amendment have already been met. (See *Dunn*, *supra*, 81 Cal.App.5th at p. 410, fn. 14.)

criminal history recited in the probation report does not satisfy section 1170, subdivision (b)(3). The People argue that the circumstance fits within the exception for prior convictions contained in section 1170, subdivision (b)(3) for certified records of conviction.

Section 1170, subdivision (b)(3) permits a trial court to "consider the defendant's prior convictions in determining sentencing based on a certified record of conviction without submitting the prior convictions to a jury." (§ 1170, subd. (b)(3).) A probation report is not a certified record of conviction. (*Dunn*, *supra*, 81 Cal.App.5th at p. 403.)

Here, the trial court noted at sentencing that defendant had "five violations of probation" and the record on appeal includes certified records of defendant's prior convictions, which document defendant's convictions for numerous offenses over the past 20 years, as well as prior prison sentences he served. The certified records also show more than five probation and parole violation allegations against defendant. However, the records do not reflect the basis or outcome of all the probation and parole violation allegations. Accordingly, we find that the fourth aggravating circumstance does not fall within section 1170, subdivision (b)(3), and we cannot conclude that the court would have reached the same conclusion on that circumstance without finding true beyond a reasonable doubt all of the facts underlying the aggravating circumstance of defendant's prior performance on probation and parole.

As we answer *Dunn* question 1(b) in the negative, we must last determine the answer to *Dunn* question 2, whether there is a reasonable probability that the trial court would have imposed a sentence other than the upper term in light of the aggravating circumstances provable from the record as determined in the prior steps. If the answer is no, the error was harmless. As discussed above, the harmless error analysis to be applied in this case is the *Watson* standard, whether "it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." (*Watson*, *supra*, 46 Cal.2d at p. 836.)

19.

We conclude the error was harmless.  At sentencing, as discussed above, the trial court explained its choice of the upper terms for counts 1 and 3, giving great weight to the excessive force used by defendant and his long history of convictions for violence showing he is a danger to society.  It also noted there were no mitigating circumstances.  A single aggravating circumstance is sufficient to impose an upper term sentence.  (*People v. Black* (2007) 41 Cal.4th 799, 813.)  The court was therefore permitted to impose the upper terms on counts 1 and 3 based on the first three aggravating circumstances it cited at sentencing.

Given the trial court's observations and findings on the record, we conclude that it is not reasonably probable that the court would have imposed a sentence lower than the upper terms for counts 1 and 3 had it only identified the first three aggravating circumstances.  Therefore, any section 1170 error caused by its reliance at sentencing on defendant's prior performance on probation and parole was harmless.  (*Dunn*, *supra*, 81 Cal.App.5th at pp. 409–410.)

### 3.    Aggravating Circumstances Relating to Count 3

Defendant last contends that the trial court erred in applying section 1170, subdivision (b) by not making findings in aggravation that were related to the criminal conduct in count 3 (§§ 18, 69) under rule 4.421(a) because the offense in count 3 was based on a separate act involving separate victims from count 1 (§§ 192, 193).  Defendant contends the "violent nature of the crime" aggravating circumstance (rule 4.421(a)(1)) found true relates only to count 1.

The "great violence" aggravating circumstance (rule 4.421(a)(1)) relates to only count 1 (voluntary manslaughter; §§ 192, 193), as the trial court explained it found that circumstance true "given the overall circumstances involving how … Mansfield was found in the cell."  However, the other two aggravating circumstances found true by the court, "danger to society" (rule 4.421(b)(1)), and "prior convictions" (rule 4.421(b)(2)), both relate to defendant, rather than a specific count.

20.

At sentencing, the trial court stated it gave great weight to the "excessive force" used by defendant in count 1, referring to the "great violence" aggravating circumstance. However, the court's statement at sentencing makes clear that even though the "great violence," relates only to count 1, it still found the remaining aggravating circumstances that relate to defendant, rather than a specific count, sufficient to justify the upper term on count 3. (See *People v. Black*, *supra*, 41 Cal.4th at p. 813 [A single aggravating circumstance is sufficient to impose an upper term sentence.].) When discussing the "danger to society" aggravating circumstance, the court noted, "the defendant has engaged in violent conduct that indicates a serious danger to society as evidenced by his present conviction as well as prior convictions." It also extensively discussed the "prior convictions" aggravating circumstance, noting, "the Court must likewise consider the totality of the circumstances, which would also include the defendant's criminal history.… Court has also been provided with a probation officer's report which outlines … the defendant's criminal history. When considering this information, the Court does recognize that the defendant has suffered one past juvenile adjudication, at least two misdemeanor convictions, nine felony convictions, five violations of probation. Of the nine felony convictions, five qualified as strike priors."

"[I]t [is] not improper for the court to rely on the same facts to impose both upper terms." (*People v. Williams* (1984) 157 Cal.App.3d 145, 156; see *People v. Price* (1984) 151 Cal.App.3d 803, 812.) "Although preferred practice would have sentencing courts state reasons separately for each term imposed, for purposes of appellate review," here, the court's "incorporation by reference of its prefatory remarks sufficiently reveals its reasons for imposing two upper terms" on both counts 1 and 3. (*Williams*, at p. 156.) Accordingly, we conclude the trial court did not err by not stating separate reasons for its imposition of the upper terms on counts 1 and 3.

We conclude the trial court did not err in applying section 1170, subdivision (b) by finding no mitigating circumstances or by not stating separate reasons for imposing the

upper terms on counts 1 and 3.  Further, while the court did err in applying section 1170, subdivision (b) by relying on the aggravating circumstance of defendant's prior performance on probation and parole (rule 4.421(b)(5)) because the facts underlying that circumstance were not found true by the court beyond a reasonable doubt or proven by a certified record of defendant's convictions, we conclude the error was harmless.

## DISPOSITION

The trial court's judgment is affirmed.

HILL, P. J.

POOCHIGIAN, J.

22.

MEEHAN, J., Concurring.

I agree with the majority's affirmance of the trial court's sentencing decision under Penal Code section 1170, subdivision (b),[1] and, therefore, I concur in the disposition. In reaching that disposition, I also agree with the majority that the trial court relied on three valid aggravating factors, but erred in finding defendant's prior performance on probation and parole was unsatisfactory.[2] (Cal. Rules of Court, rule 4.421(b)(5).) However, I respectfully write separately because I would find the error harmless under a traditional application of *Watson*, as follows. (*People v. Watson* (1956) 46 Cal.2d 818, 836 (*Watson*).)

The amendment to section 1170 by Senate Bill No. 567 (2021–2022 Reg. Sess.) had been in effect for more than seven months when defendant was sentenced. Therefore, this case does not involve retroactive application of the statute and there is no suggestion the trial court was otherwise unaware of the scope of its sentencing discretion.[3] (*People v. Gutierrez, supra*, 58 Cal.4th at p. 1391; accord, *People v. Salazar, supra*, 15 Cal.5th at p. 425; *People v. Flores* (2020) 9 Cal.5th 371, 431–432.) This case

---

[1] All further statutory references are to the Penal Code.

[2] So far as it appears from the appellate record in this case, the trial court did not base its finding on this factor on a certified record pursuant to section 1170, subdivision (b)(3). I am not persuaded that this factor *necessarily* falls outside the scope of the statute's prior conviction exception, and this case does not present the opportunity to consider that issue. (See *People v. Towne* (2008) 44 Cal.4th 63, 82–83; *People v. Falcon* (2023) 92 Cal.App.5th 911, 954–955 & fn. 13, review granted Sept. 13, 2023, S281242 (*Falcon*).) Therefore, I do not join the majority's opinion to the extent it takes that position. (Maj. opn., pp. 16–18.)

[3] The majority characterizes this court's decision in *Falcon* as limited to the retroactive application of Senate Bill No. 567 (2021–2022 Reg. Sess.). (Maj. opn., p. 18, fn. 6.) In *Falcon, supra*, 92 Cal.App.5th at pages 950–951, review granted, a panel of this court declined to follow the harmless error analysis articulated by a different panel of this court in *People v. Dunn* (2022) 81 Cal.App.5th 394, review granted October 12, 2022, S275655, which was also a retroactive application case, and concluded that remand was required under *Gutierrez*, which provided the applicable standard for assessing error in the context of retroactive application of Senate Bill No. 567 (2021–2022 Reg. Sess.). (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391; accord, *People v. Salazar* (2023) 15 Cal.5th 416, 424–425.) Neither the analysis nor the concerns raised in *Falcon* are as limited as the majority suggests, however, and I do not join in that position.

also does not involve an unauthorized sentence claim (*Falcon*, *supra*, 92 Cal.App.5th at pp. 942–943, review granted; see *In re G.C.* (2020) 8 Cal.5th 1119, 1130 ["an unauthorized sentence or one in excess of jurisdiction is a sentence that 'could not lawfully be imposed under any circumstance in the particular case' "]), or a claim of structural error (*People v. Sivongxxay* (2017) 3 Cal.5th 151, 178–179 (*Sivongxxay*)).

"States are free to apply their own harmless error rules to errors of state law" (*Sivongxxay*, *supra*, 3 Cal.5th at p. 178), and, absent an error of the foregoing type or a federal constitutional error,[4] we generally evaluate a claim of state statutory error under the *Watson* harmless error test (*People v. Lewis* (2021) 11 Cal.5th 952, 973, citing *Watson*, *supra*, 46 Cal.2d at p. 836; accord, *Sivongxxay*, *supra*, at pp. 178–179).  Under *Watson*, "a defendant must demonstrate that it is 'reasonably probable that a result more favorable to [the defendant] would have been reached in the absence of the error.' " (*Sivongxxay*, *supra*, at p. 178, quoting *Watson*, *supra*, at p. 836; accord, *People v. Lewis*, *supra*, at p. 974).

In this instance, the trial court found four aggravating factors and no mitigating factors.  Although the court erred in finding that defendant's performance on probation and parole was unsatisfactory, three valid aggravating factors support the sentencing choice.  Under the circumstances in this case, defendant fails to show a reasonable

---

**4**     This case does not present the situation where there were no properly proven factors, but as observed in *Falcon*, "As the requirements under state law frame how the Sixth Amendment applies, and because amended section 1170[, subdivision ](b) now effectively incorporates Sixth Amendment principles, it is likely better to consider state law viability before moving to the constitutional analysis—this is particularly true if, as we have questioned, the lack of *any* properly proven or established aggravating circumstances signals an unauthorized sentence under state law.  If a circumstance is properly established under the amended law, it almost certainly satisfies Sixth Amendment principles.  And, if there are no properly proven circumstances, and this constitutes an unauthorized sentence under state law, then there is no need to consider the constitutional question because resentencing would be required." (*Falcon*, *supra*, 92 Cal.App.5th at p. 952, fn. 12, review granted.)

probability of a more favorable result had the trial court not erred in finding the fourth aggravating factor.  (*Watson*, *supra*, 46 Cal.2d at p. 836.)[5]

Therefore, on these grounds, I concur with the majority's disposition in this case.

MEEHAN, J.

---

[5]    This result will not always follow from evaluating an erroneous finding on an aggravating factor under *Watson*, as some cases may not involve any valid aggravating factors, may involve a mix of aggravating and mitigating factors, or may otherwise evade a determination by a reviewing court that there is no reasonable probability of a more favorable result had the error not occurred.  As stated in *Falcon*, "The harmless error test under *Watson* has indeed been applied in cases where a sentencing court considered improper sentencing factors." (*Falcon*, *supra*, 92 Cal.App.5th at p. 950, review granted, citing *People v. Price* (1991) 1 Cal.4th 324, 492 & *People v. Avalos* (1984) 37 Cal.3d 216, 233.)  However, "[e]ven this application of *Watson* in *Avalos* came with a caveat:  because the pre-2007 [determinate sentencing law] contained a presumptive middle term sentence coupled with the requirement that aggravating circumstances must outweigh mitigating circumstances before imposition of the upper term was proper, *reviewing courts were also required to reverse when it could not be determined whether the improper factor was determinative for the sentencing court in weighing the circumstances and imposing an upper term*." (*Falcon*, *supra*, at p. 950, fn. 11, italics added, citing *Avalos*, *supra*, at p. 233.)